UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRENDA GEILING and CAL GEILING,

                Plaintiffs,                      Case No. 14-cv-11027

v.                                    Honorable Thomas L. Ludington

WIRT FINANCIAL SERVICES, INC., et al.

                Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART REPORT AND
RECOMMENDATION, OVERRULING OBJECTIONS, DENYING JOINT MOTION
FOR RULE 56(f) DENIAL AS MOOT, GRANTING MOTIONS TO DISMISS, DENYING
MOTION TO AMEND AS MOOT, DENYING SECOND MOTION TO AMEND, AND
DISMISSING FIRST AMENDED COMPLAINT**

      In 2007, Brenda Geiling, with her husband Cal Geiling as cosigner, secured a loan from a

financial services company. In 2008, she secured another loan from a different credit union,

which she used to satisfy the first loan. Mrs. Geiling's thirty-foot boat and its trailer were

provided as collateral for the second loan. Mrs. Geiling then defaulted on this second loan. She

and her husband now sue five separate parties seeking a total of at least $12,500,000.00 in

damages and various other relief.

      The Geilings bring a five-count First Amended Complaint against Wirt Financial

Services, Inc.; Dow Chemical Employees Credit Union; Masud, Patterson, Schutter, Peters &

Vary, P.C.; W. Jay Brown, PLC; and W. Jay Brown, the individual. The Geilings allege that the

Defendants violated the Fair Credit Reporting Act (Count I); violated Michigan's Social Security

Number Protection Act (Count II); committed the tort of Intentional Infliction of Emotional

Distress (Count III); committed the tort of Public Disclosure of Private Facts (Count IV); and committed the tort of False Light (Count V). ECF No. 18.[1]

All Defendants have filed Rule 12 motions seeking dismissal of the Geilings' First Amended Complaint. *See* ECF Nos. 21, 35, 37, & 65. Those motions, along with all pretrial matters in this case, were referred to Magistrate Judge Morris for consideration. ECF No. 15. While some of those motions were pending, the Geilings filed two motions to amend their complaint. ECF Nos. 43 & 71. Also during that time, Judge Morris directed the parties to file Rule 56 materials, since many of the motions to dismiss were filed as alternative motions for summary judgment. ECF No. 61. In response to that order, the Geilings filed a motion requesting that Defendants' alternative Rule 56 motions be denied as premature. ECF No. 62.

On December 31, 2014, in a meticulously thorough Report and Recommendation, Judge Morris recommended granting all pending motions to dismiss, denying Plaintiffs' motions to amend and motion for discovery, and dismissing Plaintiffs' First Amended Complaint. ECF No. 88. The Geilings objected to the Report on February 12, 2015. ECF No. 92. All Defendants responded to these objections. ECF Nos. 93, 94, 95, & 96. Those objections will now be considered.

## I.

Brenda and Cal Geiling are a husband and wife who reside in Michigan. ECF No. 18, ¶ 26.

Defendant Wirt Financial Services, Inc. ("Wirt"), is a Michigan Corporation located in Saginaw and Bay City, Michigan. *Id*. at ¶ 27. Defendant Wirt is a financial services company in

---

[1] Counts IV and V of the First Amended Complaint are, in their prayers for relief, ostensibly directed at all Defendants. The facts pled with respect to each count appear only directed at W. Jay Brown the individual. This discrepancy is moot in light of the disposition below.

the business of providing consumer loans. Defendant Masud, Patterson, Schutter, Peters & Vary, P.C. ("Masud"), is "a Michigan Domestic Professional Services Corporation" operating under the name of Masud Labor Law Group. *Id.* at ¶ 30. Defendant Dow Chemical Employees' Credit Union ("DCECU") is a Michigan Corporation in the business of providing consumer loans. *Id.* at ¶ 31. "Defendant W. Jay Brown is a licensed attorney in Midland, Michigan and is the resident agent and owner of Defendant W. Jay Brown PLC[,] . . . a Michigan Professional Domestic Limited Liability Company in Midland, Michigan." *Id.* at ¶¶ 32-33.

## A.

The Geilings obtained a loan from Wirt Financial Services in August 2007. The Geilings furnished Brenda Geilings' boat as collateral for the loan. In the process of providing this loan to the Geilings, Wirt "obtained Plaintiffs' personal credit reports[.]" *Id.* at ¶ 45. Twice the next year, in March and September of 2008, Wirt again requested the Geilings' personal credit reports.

In September 2008, Brenda Geiling alone obtained a loan from Dow Chemical Employees' Credit Union. This loan was also secured by Brenda Geilings' boat. That same month, she used the proceeds from the credit union loan to pay off the loan from Wirt. Wirt also closed the Geilings' loan file that month.

## B.

In 2010, DCECU initiated a lawsuit in Bay County against Wilson Motorsports. *See DCECU v. Wilson Motorsports, LLC*, Case No. 10-3925. The suit sought claim over and delivery of the collateral Brenda Geiling posted for her loan with DCECU because, the complaint alleged, she had defaulted on her loan with DCECU. The complaint asserted that the collateral, Brenda Geilings' boat, was in the possession of Wilson Motorsports.

Defendant Masud initially represented Wilson Motorsports in the claim and delivery case. During the course of the litigation, Masud, while still representing Wilson, issued a subpoena to Wirt requesting "[a]ny and all documents . . . relating to Brenda Geiling and a 1998 Spectre 30 foot boat[.]" ECF No. 18, Ex. G. Wirt, as part of the documents produced in response to this subpoena, transmitted the Geilings' credit reports to Masud and Wilson.

Eventually, as the case progressed, DCECU added a claim for conversion and added David John Masud, a principal of Defendant Masud, as a defendant. After David Masud was joined as a defendant, Masud's representation of Wilson ceased. Wilson then retained W. Jay Brown, PLC.

During the course of the litigation the parties exchanged discovery requests. According to the Geilings, this led to Wilson transferring their credit reports, which it had received from Wirt, to DCECU. The Geilings also allege that when W. Jay Brown, PLC, assumed representation for Wilson, DCECU transmitted the Geilings' credit reports back to W. Jay Brown, PLC, and Wilson.

*DCECU v. Wilson* eventually settled. Pursuant to the settlement agreement, DCECU received possession of the boat from Wilson as well as monetary compensation from Wilson and David Masud.

### C.

After the close of the *DCECU v. Wilson* case, in January 2013, Wilson Motorsports, with W. Jay Brown, PLC, serving as counsel, initiated a lawsuit against the Geilings in Bay County. *Wilson Motorsports, Inc. v. Geiling, et al*., Case No. 13-24413. "In February 2013[,] the Geilings requested discovery of two different sets of documents from Wilson[.]" ECF No. 18, ¶ 71. When W. Jay Brown, PLC, on behalf of Wilson, responded to these discovery requests, it "sent the

Geilings a thumb drive via first class mail, which was lost in the mail and never received by the Geilings." *Id*. at ¶ 72.

Eventually the Geilings obtained the discovery they sought. Upon receipt of the documents, they realized that their consumer credit reports, first obtained by Wirt, were included in the documents they received and that these documents also contained the Geilings' unredacted social security numbers. Receiving these documents in discovery allegedly alerted the Geilings to the facts that transpired before this point, facts which they recite in their First Amended Complaint.

### D.

In a somewhat unrelated allegation, the Geilings allege that their contact with W. Jay Brown, PLC, and its principal, W. Jay Brown, was not limited to the above-mentioned litigation. They claim that "[o]n June 13, 2013 in a public meeting at the Tittabawasee Township Zoning Board of Appeals, W. Jay Brown announced in a public manner to citizens of the township and board members[:] 'I am prosecuting Brenda Geiling in a court of law'[.]" ECF No. 18, ¶ 79. According to the Geilings, this statement was broadcast "over a speaker [throughout] the township building." *Id*. at ¶ 106.

### II.

### A.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*,

517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "The standard of review for a judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001)

## B.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002). If the Court accepts a report and recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a de novo review of the record.

## C.

A pro se complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). A pro se pleading "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle*, 429 U.S. at 106 (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "However, the Supreme Court has 'never suggested procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'" *West v. Adecco Employment Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (quoting *McNeil v. United States*, 508 U.S. 106, 113 (1993)). That is, pro se plaintiffs are also held to the strictures of the Federal Rules of Civil Procedure, including Rule 8(a). *Perry v. United Parcel Serv.*, 90 F. App'x 860, 861 (6th Cir. 2004) ("[T]he courts have not been willing to abrogate basic pleading essentials in pro se suits. '[M]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements.'" (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (internal citations omitted)).

## III.

The Geilings first object to Judge Morris' consideration of documents beyond the pleadings, such as documents attached to Defendants' motions to dismiss. Rule 12(b)(6) motions must typically be limited to consideration of the pleadings or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

In addition to the general rule—that a document must be referred to in the complaint and central to the claim—the Sixth Circuit has permitted courts to take judicial notice of some documents of public record. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005). For example, a court may take judicial notice of other court proceedings, including transcripts. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). However, taking judicial notice of documents has been limited to allow only "the use of such documents . . . for the fact of the documents' existence, and not for the truth of the matters asserted therein." *Passa*, 123 F. App'x at 697 (collecting cases).

Indeed, judicial notice of public records may only be taken for those records "whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Id.* That is, the Court "must only take judicial notice of facts which are not subject to reasonable dispute." *Id.* "When considering public documents in the context of a motion to dismiss, a court may not accept a document to decide facts that are in dispute." *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006). Thus, the Court should not consider evidence beyond the pleadings.

The evidence to be relied upon here, and which was relied upon by Judge Morris, does not go beyond what is permitted under Rule 12(b)(6). The state court proceedings referenced are matters of public record of which this Court may take judicial notice. Those proceedings will not be used to prove facts in dispute but merely to establish facts "whose accuracy cannot reasonably be questioned." Furthermore, as analyzed below, the disposition of the Geilings' First Amended Complaint does not require consideration of any extrinsic documents beyond those attached to

their complaint. Because of this, the motions to dismiss will not be converted to Federal Rule of Civil Procedure 56 motions for summary judgment. As such, the Geilings' motion requesting denial of any prospectively converted Rule 56 motions, ECF No. 62, will be denied as moot.

## IV.

The Geilings make five claims in their First Amended Complaint. ECF No. 18. First, they claim that Defendants violated the Fair Credit Reporting Act ("Act") (Count I). As to Counts II-V, the Geilings bring four different state law claims. They allege that Defendants violated Michigan's Social Security Number Protection Act (Count II); committed the tort of Intentional Infliction of Emotional Distress (Count III); committed the tort of Public Disclosure of Private Facts (Count IV); and committed the tort of False Light (Count V). Judge Morris' Report recommended granting Defendants' Motions to Dismiss and dismissing Count I of the Geilings' First Amended Complaint. It then recommended declining supplemental jurisdiction and dismissing the remainder of the Geilings' claims. In the alternative, the Report recommended dismissing the Geilings' state law claims on the merits.

The Geilings make comprehensive objections to Judge Morris' Report. For that reason, and because they are pro se, their claims under the Act (Count I) will be reviewed de novo and their First Amended Complaint will be similarly tested. Because the Geilings' first claim, that Defendants violated the Fair Credit Reporting Act, fails to state a claim for relief, it will be dismissed with prejudice. The corresponding disposition recommended by Judge Morris will be adopted. The rationale by which Judge Morris reached that disposition, however, will be rejected. Further, since the Geilings' next four claims are brought under state law, the Court will adopt Judge Morris' recommendation and decline to exercise supplemental jurisdiction over the claims. The Geilings' state law claims, Counts II-V, will be dismissed without prejudice.

### A.

Count I of the Geilings First Amended Complaint alleges violations of the Fair Credit Reporting Act ("Act") by all Defendants. The heart of Plaintiffs' claim is that each defendant impermissibly used the Plaintiffs' consumer credit report in violation of the Act. ECF No. 18, ¶¶ 13-17. Each defendant is alleged to have violated the Act in essentially the same manner: by transferring the Geilings' consumer credit reports in response to civil discovery requests. Defendant Wirt allegedly violated the Act by providing the Geilings' reports in response to a discovery subpoena served upon it by Defendant Masud on behalf of Wilson Motorsports and in relation to the matter of *Dow Chemical Employees' Credit Union v. Wilson Motorsports, LLC*, Case No. 10-3924. Defendants Masud and Dow Chemical Employees' Credit Union allegedly violated the Act by transferring the Geilings' reports during discovery in the *DCECU v. Wilson* case. Lastly, W. Jay Brown, PLC, and W. Jay Brown allegedly violated the Act by transferring the reports to the Geilings themselves when the Geilings made discovery requests in the case of *Wilson Motorsports, Inc. v. Geiling, et al.*, Case No. 13-24413.

### 1.

While the Geilings contest Judge Morris' analysis of their Fair Credit Reporting Act claims under § 1681b(f), they make an argument that is conceptually precedent to analyzing their claims under § 1681b(f). They argue that "[u]ser to user dissemination is not permitted anywhere in the FCRA or case law." ECF No. 92 at 9. Per the Geilings, § 1681e(c), "in unambiguous language, gives the only disclosure of consumer reports by users allowed." *Id*. at 12. Indeed § 1681e(c), titled "Disclosure of consumer reports by users allowed," reads:

> A consumer reporting agency may not prohibit a user of a consumer report furnished by the agency on a consumer from disclosing the contents of the report to the consumer, if adverse action against the consumer has been taken by the user based in whole or in part on the report.

15 U.S.C. § 1681e(c). The Geilings' argument appears to be that this section, in specifically outlining a permissible manner in which users may disclose consumer reports, also operates to prohibit any other use of a consumer report by a user.[2] The conclusion does not follow from the premise. If the Geilings are correct that "[u]ser to user dissemination is not permitted anywhere in the FCRA or case law", ECF No. 10 at 9, they have not shown the converse to be true: that it is prohibited by the Act or supporting case law. In fact, their complaint makes no reference to any provision of the FCRA that would impose liability on a "user" for using or furnishing consumer credit reports.

The Geilings are unable to state a claim for relief under the Act if they cannot identify a specific place in the Act or its supporting caselaw where mere user-to-user dissemination is prohibited.[3] Section 1681e(c) of the Act, contrary to the Geilings' arguments, does not contain such a prohibition.

**2.**

In fact, the Act is devoid of any provision that, in express terms, prohibits the simple transfer of consumer reports from one user to another. Some of the defendants, and Judge Morris in her Report, have focused on another section of the act which, while not plainly written, has been interpreted to prohibit, or at least greatly restrict, user-to-user dissemination. This is § 1681b(f) of the Act, titled "Certain use or obtaining of information prohibited" and it reads:

A person shall not use or obtain a consumer report for any purpose unless—

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

---

[2] This is supported by the Geilings statement that "[t]he FCRA only authorizes disclosure to the consumer, not dissemination from User to User [sic]." ECF No. 10 at 12.

[3] Likewise, as discussed below, they do not state a claim for relief if they cannot plead facts that allege a violation of one of the Act's actual prohibitions.

> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

### i.

The selected language of this section leaves a great deal to be desired. First, Congress wrote subsections (f)(1) and (f)(2) in the passive voice. Thus, the relation of these subsections to the body of section (f) is not directly evident. For instance, under subsection (f)(1), at what time must the consumer report be furnished in accordance with a permissible purpose? When it is first produced, or each time it is used? Second, the use of the term "person" in the body of section (f) appears at odds with the certification requirement referenced in subsection (f)(2). Section 1681e of the Act, which subsection (f)(2) references, discusses certification by prospective users only at the time when credit reports are first requested from a consumer reporting agency, not when credit reports are obtained from other users. Lastly, the Act as a whole employs certain terms (e.g. user, use, purpose) both in their vernacular meaning and as terms of art. As a result, the manner in which these terms are being used is not always clear. For example, in the body of section (f) it refers to using or obtaining a consumer report "for any purpose." The text of the section does not clarify whether this is simply a commonly-used method of drafting a restrictive statute or if it is supposed to make specific reference to the permissible purposes of § 1681b(a).

These issues of statutory construction are real and courts have struggled with interpreting the Act—and § 1681b(f) in particular—when they have been confronted with claims of user-to-user malfeasance. The decisions that confront the merits of the user-to-user transfers, limited in number as they are, read § 1681b(f) as creating user-to-user liability. *See, e.g.*, *McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp. 2d 855, 858 (E.D. Mich. 2006). Under this scheme, users are not permitted to use or obtain reports (which includes furnishing them to other users) unless it is in

accordance with one of the permissible purposes listed in § 1681b(a). The difficulty with such a reading appears on the face of § 1681b(f) and is also observed by the Geilings: users, including Defendants, do not certify the purposes of their use in accordance with subsection (f)(2). The certification requirements pertain only to consumer reporting agencies.

Courts have accounted for this difficulty by not applying subsection (f)(2) of § 1681b(f) to users, only to consumer reporting agencies. Under this application, users (or, as § 1681b(f) puts it, 'persons') may not "use or obtain" a consumer credit report unless it is for one of the purposes enumerated in § 1681b(a). This construction of § 1681b(f) applies only subsection (f)(1) to users, and ignores subsection (f)(2). This reading of the Act will not be adopted.

The Act places restrictions on the means that a consumer reporting agency may employ in disseminating credit reports. It also restricts the actions that may be taken on the basis of information contained in the reports. But what the text of the Act does not do is impose liability on users when they use or obtain a credit report in an impermissible manner. Reading § 1681b(f) to operate in this way renders subsection (f)(2) of § 1681b(f) a nullity. This is an impermissible result, particularly where subsections (f)(1) and (f)(2) are written in the conjunctive, employing the word "and." 15 U.S.C. § 1681b(f).

**ii.**

A logical reading of § 1681b(f) must give meaning to each of its parts. The opening directive of the section, that "[a] person shall not use or obtain a consumer report for any purpose unless . . .", instructs that any "person", as defined by the act, must meet certain conditions before using or obtaining a consumer report. Those conditions are set forth in the conjunctive.

First, the Act requires that "the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under [§ 1681b]." 15 U.S.C. § 1681b(f)(1). The list

of permissible purposes referenced in subsection (f)(1) is found in § 1681b(a). Section (a) sets forth that "under the following circumstances and no other" may a "consumer reporting agency . . . furnish a consumer report[.]" The two provisions, subsection (f)(1) and section (a), mirror each other. Section (a) is phrased in the active voice, focusing on consumer reporting agencies furnishing reports under specific, enumerated circumstances. Subsection (f)(1) is phrased in the passive voice, focusing on the purposes for which the report is obtained. There is no room between these two subsections wherein a report may be obtained or furnished under one, but not the other.[4]

Understandably, the passive construction of subsection (f)(1) has led courts to read it more broadly than section (a) and take as its subject the "person" referenced just before in the body of section (f). But even if subsection (f)(1) is susceptible to such a reading, subsection (f)(2) restricts that reading, with the use of the conjunctive, to purposes certified by a consumer reporting agency. Furthermore, subsections (f)(1) and (f)(2) must, by their plain language, work together. The permissible statutory purpose referred to in subsection (f)(1) is invoked again in subsection (f)(2)—written once more in the passive voice—which begins "**the purpose** is certified . . . ." 15 U.S.C. § 1681b(f)(2) (emphasis added). Accordingly, the purposes referenced in subsections (f)(1) and (f)(2) must be the same.

Another confusing element of section (f), aside from its use of the passive voice, must also be addressed. The body of section (f) states that "a person shall not use or obtain a consumer report **for any purpose** unless . . . ." 15 U.S.C. § 1681b(f) (emphasis added). Once again,

---

[4] Courts applying § 1681b(f) would, of course, disagree. Those courts read subsection (a), when refracted through subsection (f) as merely being a list of permissible purposes for which a report may be obtained by a user from another person, whether that person is a user, consumer reporting agency, or consumer. Paradoxically, subsection (a), read by itself, means just what it says: that a consumer reporting agency may only furnish a consumer report for one of the listed purposes.

understandably, it is tempting to read this reference to purpose as the selfsame purpose referred to in subsections (f)(1) and (f)(2). It is not. Rather, it is employed here not as a term of art, but as a common tool of statute-drafting to express a broad prohibition. *See, e.g.*, 47 U.S.C. § 227(c)(3)(K) ("If the Commission determines to require such a database, such regulations shall . . . prohibit the use of such database **for any purpose** other than compliance with the requirements of this section[.]") (emphasis added), 2 U.S.C. § 431(8)(A)(ii) ("The term 'contribution' includes . . . the payment by any person of compensation for the personal services of another person which are rendered to a political committee without charge **for any purpose**.") (emphasis added), TEX. CONST. art. 11, § 4 ("They may levy, assess and collect such taxes as may be authorized by law, but no tax **for any purpose** shall ever be lawful for any one year . . .") (emphasis added). Unlike subsections (f)(1) and (f)(2), then, this is not a reference to the purposes found in § 1681b(a).

### iii.

In light of the permissible purpose requirement of subsection (f)(1) and the certification requirement of subsection (f)(2), § 1681b(f) must only prohibit user-to-user transfers of consumer credit reports that, at the time they are initially issued, are not issued in compliance with subsections (f)(1) and (f)(2). Thus, there is no requirement in § 1681b(f) that a user certify each time it uses or obtains a consumer credit report. Similarly, there is no requirement that a user 'use or obtain' a consumer credit report for a permissible purpose. What is required by § 1681b(f) is that when a person uses or obtains a consumer credit report, that report was initially generated by a consumer reporting agency in compliance with subsections (f)(1) and (f)(2). That is: (i) it was produced for a user, (ii) that user had a permissible purpose, (iii) the consumer reporting agency properly certified that purpose in compliance with § 1681e. This more

restrictive reading of the Act makes sense when considering the statutory scheme Congress constructed. Under this reading § 1681b(f) discourages the continued transfer of reports that were initially furnished in violation of the Act.[5] If a report is furnished in compliance with the Act § 1681b(f) has no concern for downstream transfers. Any ills wrought by downstream transfers of a properly produced consumer report are controlled for by other sections of the Act. This point is discussed below.

### iv.

Proponents of an alternative reading of § 1681b(f) argue that not imposing liability for each user-to-user transfer leaves too large a hole in the statutory scheme. This claim can be answered two ways. First, if such a hole exists in the language of the Act, it is not the place of the courts to fill it by a contorted interpretation of the language Congress chose. Second, and more importantly, no such hole appears to exist under a plain reading of § 1681b(f). The first point speaks for itself. The second point bears explanation.

As courts applying § 1681b(f)'s permissible purpose requirement to all downstream uses of consumer credit reports have pointed out:

> After the Fair Credit Reporting Act was enacted in 1970, courts noticed what appeared to be a loophole. The original sections 1681n and 1681o only created civil liability for failure to comply with the Act. The original section 1681b, which generally stated the circumstances under which consumer reporting agencies could provide reports, did not impose a duty on users of reports to refrain from requesting reports without a proper purpose.

*Phillips*, 312 F.3d at 363. Consequently:

---

[5] Of course, it would be illogical to impose liability on persons who come into possession of improperly furnished consumer credit reports merely by happenstance. Because of this concern, courts, including those imposing broad user liability under § 1681b(f), have employed a "passive receipt exception." Under this exception, "[m]ere passive receipt of the report would not be enough to satisfy the statutory element that [a person] 'use or obtain' a consumer report." *Phillips v. Grendahl*, 312 F.3d 357, 367 (8th Cir. 2002) abrogated on other grounds by *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007). The *Phillips* court reached this conclusion while discussing potential liability under § 1681n(a)(1)(B), the section of the Act dealing with liability for "obtaining a consumer report under false pretenses or knowingly without a permissible purpose[.]"

> . . . civil actions against users of information, rather than consumer reporting agencies, could not be premised on violation of the original section 1681b. Courts avoided this loophole by reasoning that since section 1681q created criminal liability for requesting 'information on a consumer' using false pretenses, this prohibition was a 'requirement' of the Act, and therefore provided the substantive basis for civil liability.

*Id*. at 363-64 (internal citations omitted). Congress took aim at this loophole and amended the Act "in 1996 to add to section 1681b[.]" *Id*. at 364. Specifically, § 1681b(f) was added.

The civil liability provisions in § 1681n and §1681o are important. By including these provisions in the original Act then broadening § 1681n in 1996, Congress circumscribed a wide range of impermissible actions. Without meticulously touching upon each prohibition contained in § 1681n and § 1681o, it should be observed that no behavior contrary to the purposes of the Act escapes liability under those sections. *Cf. Bickley v. Dish Network, LLC*, 751 F.3d 724 (6th Cir. 2014) (testing claims of Fair Credit Reporting Act violations under § 1681n and § 1681o without reference to § 1681b(f)). Reviewing the stated purpose of the Act, as written by Congress in § 1681, nothing indicates that mere user-to-user transfers of lawfully furnished consumer credit reports is an evil that the Act must necessarily strike against.

Rather, the harm that could follow the mere transfer of consumer credit reports was Congress' concern. This is revealed by the text of the Act. These evils include exploiting the information found in the reports or using the reports as leverage against the consumer. But the parade of horribles that can result from an unknown third party having possession of a consumer credit report is accounted for by the Act's prohibitions on, amongst other things:

1. A person obtaining a consumer report that was not furnished in accordance with the act. 15 U.S.C. § 1681(f).

2. A person obtaining a consumer report "under false pretenses or knowingly without a permissible purpose[.]" *Id*. at §1681n.

- 17 -

3. A person knowingly, willfully, or recklessly obtaining "information on a consumer from a consumer reporting agency under false pretenses[.]" *Id*. at § 1681q.

4. A person taking an adverse employment action on the basis of a consumer report or information found therein. *Id*. at § 1681b(b)(3).

5. A person taking any adverse action against a consumer on the basis of a consumer report or information found therein. *Id*. at § 1681m.

While this list is not exhaustive of all the requirements and prohibitions in the Act, it is instructive. Indeed, § 1681m may be most instructive of all. That section sets forth a comprehensive scheme that regulates the use, by users, of consumer reports and the information they contain. A user's failure to comply with the requirements of § 1681m can result in liability under either of the civil liability provisions. Imposing liability under § 1681b(f) is an unnecessary aid to the Act's enforcement scheme.

**v.**

Ultimately, what this exposition of the Act means is that users are not civilly liable for merely using or obtaining properly furnished consumer credit reports where that use or obtaining does not run afoul of one of the Act's other express prohibitions or requirements. Nothing in the Act has been shown to impose liability for such behavior. Furthermore, nothing in the Act indicates that such liability is necessary to effectuate the enforcement scheme contemplated by Congress when the Act was enacted and subsequently amended. Thus, this case's holding is simple: facts alleging that users merely obtained consumer reports, where those reports were initially issued in compliance with § 1681b(f), absent more, does not state a claim for relief under the Act.

As noted above, the Geilings do not specify what section of the Act they bring their claim under. The purpose of the § 1681b(f) discussion was to rule out that section as a basis of liability. While the Geilings could conceivably be bringing their claim under any of the civil liability

- 18 -

provisions in the Act, they do not allege facts consistent with establishing liability under any of those provisions. Rather, the facts alleged—that Defendants, as users, impermissibly disseminated the Geilings' reports—would only state a claim under an alternative reading of § 1681b(f). But since that reading has not been adopted, the Geilings do not state a claim in Count I of their First Amended Complaint.

## B.

Having concluded that the Geilings' federal claim is to be dismissed, their claims under state law for violation of the Michigan Social Security Number Privacy Act, Intentional Infliction of Emotional Distress, Public Disclosure of Private Facts, and False Light must now be addressed.

The Court has supplemental jurisdiction over these state law claims because they form part of the same controversy as the Geilings' federal claims. *See* 28 U.S.C. § 1367(a). However, this Court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). However, the dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Id.* at 863.

- 19 -

In addition, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The issues presented are more appropriate for resolution by the state court system and therefore the Court declines to exercise its supplemental jurisdiction. The Geilings' supplemental state law claims will be dismissed without prejudice.

## IV.

Lastly, the Geilings have also moved to further amend their complaint. They have filed two motions seeking this relief. ECF Nos. 43, 71. Because the second motion adds to the material the Geilings sought to add in their first motion, the prior motion is moot. Only the Geilings' second motion to amend will be considered.

A court should "freely give leave" to amend "when justice so requires." FED. R. CIV. P. 15(a)(2). "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973). "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge[.]" *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 591 (6th Cir. 1990).

Since the Geilings state law claims are to be dismissed due to this Court's decision not to exercise supplemental jurisdiction, the proposed amendments that attempt to sufficiently state federal claims will be analyzed first.[6] If these amendments are futile, then addressing the

---

[6] The Geilings attempt to amend their complaint to also incorporate a claim under 42 U.S.C. § 1983.

- 20 -

Geilings' other proposed amendments is unnecessary since they relate only to state law claims which the Court will decline to hear under its supplemental jurisdiction.

**A.**

First, the Geilings seek to add more factual information in support of their claim that Defendants violated the Act. The additional allegations that the Geilings propose which expand upon the factual circumstances previously presented are as follows,[7] (sic throughout):

1. "In 2007 the Plaintiffs obtained a loan from Wirt Financial Services, Inc., using Brenda Geilings boat as collateral. Wirt obtained credit reports from CRS (a credit reporting agency). Wirt certified to CRS when it obtained these credit reports that they would only be used once, for the extension of credit and would not be shared with third parties. During the loan process at Wirts office, Steve Wirt approached the Plaintiffs and asked them how they had been approved to work at Hemlock Semi Conductor and Dow Corning." ECF No. 71, Ex. 1 at ¶ 34.

2. "In 2007, shortly after Wirt pulled the Plaintiffs credit reports, the Plaintiffs experienced an adverse action from those two major corporations which they had a business relationship with in construction. One of the reasons cited was 'new information from creditors'. The Plaintiffs were never able to find out the true source of this information and for the adverse action, as these companies stated the reasons were 'confidential', until 2013 when Elena Brunett, an employee of Wirts at the pertinent time frame, indicated to the Plaintiffs Wirt had disseminated the Plaintiffs private financial information." *Id*. at ¶ 35.

3. "At all times pertinent, Defendant Wirt et al had a duty to keep the Plaintiffs' credit reports and other private and personal financial information, including full social security numbers, secure from third parties under the FCRA." *Id*. at ¶ 81.

4. "Defendant DCCU had no legal right to obtain, view, use or disseminate Plaintiff Cal Geilings consumer reports for litigation. This is an impermissible purpose in violation of the FCRA. Cal Geilings name did not appear in the subpoena." *Id*. at ¶ 83.

5. "Defendant DCCU is attempting to collect a grossly exaggerated amount as a debt after selling the boat and failing to reduce the debt." *Id*. at ¶ 84.

6. "Defendant DCCU has reported inaccurate debt to credit reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C 1681 Section 623(a)(1)(A)." *Id*. at ¶ 85.

---

[7] The Geilings provide additional factual information in their proposed Second Amended Complaint. This information, however, only provides more specific detail in relation to their prior claims that have been deemed legally insufficient. This additional detail does not alter the legal insufficiency of the claims.

These additions, though numerous, add nothing to their claims. They will be addressed individually.

## 1.

First, the Geilings add more information about the process by which Wirt originally obtained their consumer credit reports. They indicate for the first time that Brenda Geilings' boat was used as collateral for this first loan from Wirt. They also claim that Wirt "certified to CRS that [it] would only use[ the credit reports] once." *Id.* at ¶ 34. This may be, but how this states a claim for relief under the Fair Credit Reporting Act is not evident. If anything, the Geilings appear to be claiming that they are third-party beneficiaries of the agreement between Wirt and Credit Plus.[8] But running afoul of this provision of the agreement, if indeed Wirt did so, does not state a federal claim for relief under the Fair Credit Reporting Act.

## 2.

Second, the Geilings, in the same amended paragraph of their Proposed Amended Complaint, ECF No. 71, Ex. 1 at ¶ 34, claim that "During the loan process at Wirts office, Steve Wirt approached the Plaintiffs and asked them how they had been approved to work at Hemlock Semi Conductor and Dow Corning." This also does not state a claim. Even liberally construing this allegation does not approach an allegation of the sort of activity the Act seeks to remedy. The Court would need to pile inference upon inference to draw near to a claim that Wirt acted improperly. Mere questioning does not violate the Act.

The Geilings appear, however, to make an attempt at crafting a new allegation on the basis of this questioning by Wirt. The Geilings next claim that after this questioning from Wirt, they "experienced an adverse action from [Hemlock and Dow Corning, companies with] which

---

[8] A copy of this agreement was attached to Wirt's motion to dismiss, ECF No. 23, as Exhibit A. This is presumably where the Geilings gleaned this information from.

they had a business relationship with in construction." *Id.* at ¶ 35. But their complaint is devoid of what those "adverse actions" were. Mere recitation of these terms is nothing more than a conclusory allegation that Defendants violated the Act. *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). Furthermore, they do not allege how any illegal action of Wirt let to these "adverse actions." The Geilings purport to have incriminating testimony from a former Wirt employee who, at current, refuses to provide them information until some sort of order of protection is entered. This allegation, like those before it, is no more than a request by the Geilings to expand the case on the basis of speculation. The complaint will not be amended on this ground.

**3.**

Next, the Geilings claim that Wirt had a duty under the Act to protect their private information. Nothing in the Act indicates that such a broad, generalized duty was placed on Wirt. The Act's broad purpose may encompass the protection of private financial information, but this alone does not create a similar broad duty of protection. *See supra* § III.A (explaining that the Act protects against adverse actions taken on the basis of credit reports and the information contained therein and does not protect against mere transfer).

**4.**

The Geilings also make additional allegations against Dow Chemical Employees' Credit Union. First, they claim that DCECU "had no legal right to obtain, view, use or disseminate Plaintiff Cal Geilings consumer reports for litigation. . . . Cal Geilings name did not appear in the subpoena." ECF No. 71, Ex. 1 at ¶ 83. But any legal claim the Geilings seek to prop up with this allegation is undercut by their First Amended Complaint. In the Geilings' First Amended

Complaint they admit that both Brenda and Cal Geiling obtained a loan from Wirt and that in connection with that loan consumer credit reports were produced for both of them. *See* ECF No. 18 at 2.

Furthermore, the Geilings admit in their proposed amended complaint that Brenda Geilings' boat was used as collateral for the loan from Wirt. ECF No. 71, Ex. 1 at ¶ 34. The Geilings attached to their First Amended Complaint the subpoena that was issued to Wirt and with which they take issue. ECF No. 18, Ex. G. While they are correct that the subpoena does not name Cal Geiling, it does request "any and all documents . . . relating to . . . a 1998 Spectre 30 foot boat[.]" *Id*. This is the same boat the Geilings used as collateral when both Cal and Brenda Geiling received their initial loan from Wirt. Thus, nothing the Geilings allege in their proposed amended complaint states a claim for a violation of the Act merely on the basis of DCECU coming into possession of Cal Geilings' consumer credit report.

### 5.

The Geilings' second new claim against DCECU is that they are "attempting to collect a grossly exaggerated amount as a debt after selling the boat and failing to reduce the debt." ECF No. 71, Ex. 1 at ¶ 84. Assuming this is true, nothing in the Act provides redress for consumers where a user attempts "to collect a grossly exaggerated amount" of debt. But even if this claim sounded elsewhere in federal law, say under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692*ff*.[9], it is nothing more than a conclusory allegation. The Geilings have not provided any factual matter to show that the debt DCECU attempts to collect is exaggerated. Indeed, aside from an oblique reference to a collateral legal proceeding, they offer no evidence that DCECU is actually attemplegalting to collect a debt. Even assuming that is true, the Geilings admit that they

---

[9] The Geilings invoke the Fair Debt Collection Practices Act in ¶ 77 of their proposed amended complaint.

have attempted to remove those proceedings to federal court. Any claims the Geilings may have regarding the collection of that debt are better argued in that matter than the present case.

**6.**

The final new claim the Geilings make against DCECU is that it has "reported inaccurate debt to credit reporting agencies in violation of the Fair Credit Reporting Act, 15 U.S.C 1681 Section 623(a)(1)(A)." ECF No. 71, Ex. 1 at ¶ 85. The Geilings are attempting here to state a claim for relief under § 1681s-2 of the Act. They cannot do so. Section 1681s of the Act makes no provision for private enforcement. In fact, enforcement is specifically entrusted to the Federal Trade Commission. Even if the Geilings were able to bring a private cause of action under this section their allegations are entirely conclusory. They do no more than recite the proposed cause of action found in § 1681s-2. Rule 12(b)(6) requires more.

**B.**

Aside from additional allegations under the Act, the Geilings attempt to state an entirely new federal cause of action: that Defendants violated 42 U.S.C. §1983. ECF No. 71, Ex. 1 ¶¶ 148-56. The bulk of these allegations are directed at the Bay County Court, but the Geilings do not request, in their motion, that the Bay County Court be joined as a defendant in this action. This request surfaces, however, in their objections to Judge Morris' Report. But as that Report ably demonstrates, this claim of the Geilings is futile. The Geilings offer no authority for the proposition that not being joined to a lawsuit violated their due process rights.

First, they claim their due process rights were violated because the lawsuit, *Dow Chemical Employees' Credit Union v. Wilson Motorsports*, affected Brenda Geilings' property interest in her boat.[10] To establish a claim under § 1983 a "plaintiff must establish both that 1)

---

[10] The Geilings have previously represented, in their response to one of the motions to dismiss that "[i]n 2010, Brenda Geiling defaulted on the loan liner agreement with Dow Chemical [Employees'] Credit Union[.] Once the

she was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Geilings do not clearly articulate the right they have been deprived.

To the extent the Geilings claim they had a due process right in participating in the litigation between DCECU and Wilson, they do not state a claim. As the Geilings admit, although the third-party complaint in that case was not adequately served, Wilson later filed a complaint against the Geilings "stating the same claims [it] had in the third party complaint in DCCU [sic] v. Wilson Motorsports." ECF No. 92 at 35. They do not indicate how their ability to respond to the claims against them was in any way altered by being served later, in a separate proceeding, rather than in the initial *DCECU v. Wilson* proceeding.

If the Geilings claim that they, or Brenda Geiling, were deprived of a property interest in Brenda Geilings' boat, they still do not state a claim. The fact of the *DCECU v. Wilson* litigation falls within the purview of this Court's judicial notice.[11] As a result, this Court is free to note that the legal proceedings in *DCECU v. Wilson* did not actually adjudicate any property interest in the boat. Rather, the case concerned possession of the boat by a creditor. DCECU was not adjudicated owner of the boat but was instead only attempting to take possession of the boat so that it could sell the boat in satisfaction of Brenda Geilings' default on her loan. Brenda Geiling has admitted to both the fact that she used her boat as collateral for her loan from DCECU and that she defaulted on that loan. How she can now claim that she was deprived of a property

loan was in default, [DCECU] owned the boat." ECF No. 42 at 3. This is ostensibly a disclaimer of any property interest in the boat.

[11] The Second Amended Complaint in *DCECU v. Wilson* was also included as an attachment to DCECU's motion to dismiss in the instant case. *See* ECF No. 65, Ex. 7.

interest in her boat when DCECU, as creditor, attempted to simply obtain possession of that boat escapes reason.

## C.

The Geilings do not demonstrate in their proposed amended complaint that they would be able to maintain a non-futile federal cause of action. There is no reason to analyze their proposed amendments to their state claims. Even if they are not frivolous, the Court would decline supplemental jurisdiction, as stated above. The Geilings' motion to amend will be denied.

## V.

Accordingly, it is **ORDERED** that the Report and Recommendation, ECF No. 88, is **ADOPTED** as to the recommended disposition.

It is further **ORDERED** that the Geilings' Objections, ECF No. 92, are **OVERRULED**.

It is further **ORDERED** that the Geilings' Joint Motion for Rule 56(f) Denial, ECF No. 62, is **DENIED as moot**.

It is further **ORDERED** that Defendant Wirt's Amended Motion to Dismiss, ECF No. 21, is **GRANTED**.

It is further **ORDERED** that Defendants W. Jay Brown and W. Jay Brown, PLC's Motion to Dismiss, ECF No. 35, is **GRANTED**.

It is further **ORDERED** that Defendant Masud's Motion to Dismiss, ECF No. 37, is **GRANTED**.

It is further **ORDERED** that Defendant Dow Chemical Employees' Credit Union's Motion for Judgment, ECF No. 65, is **GRANTED**.

It is further **ORDERED** that the Geilings' Motion to Amend, ECF No. 43, is **DENIED as moot**.

It is further **ORDERED** that the Geilings' Second Motion to Amend, ECF No. 71, is **DENIED**.

It is further **ORDERED** that Count I of the Geilings' First Amended Complaint, ECF No. 18, is **DISMISSED with prejudice** as to all Defendants.

It is further **ORDERED** that the Court **DECLINES** supplemental jurisdiction over Counts II-V of the Geilings' First Amended Complaint, ECF No. 18, and those counts are **DISMISSED without prejudice** as to all Defendants.

Dated: March 31, 2015                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON